## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| EXPRESS SERVICES, INC. d/b/a | ) | |
| EXPRESS EMPLOYMENT | ) | |
| PROFESSIONALS, a Colorado | ) | |
| corporation | ) | |
| | ) | |
|      Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-15-1181-R |
| | ) | |
| DON G. KING, an individual, | ) | |
| EMILY D.S. KING, an individual, | ) | |
| SOUTHERN STAFFING, INC., a | ) | |
| Georgia corporation, and IMPACT | ) | |
| OUTSOURCING SOLUTIONS, INC., | ) | |
| a Georgia corporation | ) | |
| | ) | |
|      Defendants. | ) | |

## ORDER

Before the Court are Defendants Emily King and Impact Outsourcing Solutions, Inc.'s Motion to Dismiss for lack of personal jurisdiction (Doc. No. 24) and Plaintiff Express Services, Inc. d/b/a Express Employment Professionals' request for jurisdictional discovery. Doc. No. 37. The Court finds as follows.

## I.    BACKGROUND

This lawsuit is the result of a soured business relationship. Express Services, Inc. brings this lawsuit against Defendants Don G. King and Emily D.S. King (hereinafter respectively referred to as "Mr. King," and "Ms. King"), Southern Staffing, Inc. ("Southern"), and Impact Outsourcing Solutions ("Impact") for breaches of contract, violation of the Lanham Act, tortious interference with contractual and business relations,

violation of the Oklahoma Deceptive Trade Practices Act, unfair competition, and unjust enrichment.

Express is a Colorado corporation with its principal place of business in Oklahoma. Am. Compl. ¶ 1. Southern is a Georgia corporation co-owned by the Kings. *Id.*, at ¶ 3; Doc. No. 24-1, at ¶ 3. Impact is also a Georgia corporation, which Mr. King partially owns. Am. Compl. ¶ 3. Ms. King has no ownership interest in, nor is she an officer or director of, Impact. Doc. No. 24-3, at ¶¶ 15-16.

According to the Amended Complaint, Express provides staffing, recruiting, and human resource services to customers through a network of franchised locations. Am. Compl. ¶ 7. In November 1998, Southern and Express entered into a Franchise Agreement under which Southern would operate an Express franchise. *Id.*, at ¶ 12. Mr. King signed the Franchise Agreement and Ms. King, as corporate secretary, attested to it. Doc. No. 24-1, at 61. The Franchise Agreement includes a forum selection clause. Doc. No. 24-2, at 56-57. On September 1, 2004, Express and Mr. King entered into a Developer Agreement under which Mr. King agreed to develop franchise prospects and also to help consult and advise existing franchisees. Am. Compl. ¶ 21.

Sometime in August 2008, Southern and Express signed an amendment to the 1998 Franchise Agreement ("Amendment"). The Amendment states that "Express and Franchisee agree to be bound by all of the terms and conditions of the original Franchise Agreement (as amended), during the additional five (5) years provided by this Amendment." Doc. No. 32-3, at 2. In conjunction with the Amendment, the Kings

executed a Shareholders Guarantee ("Guarantee").[1] Doc. No. 32-3, at 3. There is no dispute that the Guarantee is part of the Amendment. Doc. No. 38, at 7.

Somewhat simultaneously, from about 2002 through 2013, Express was providing monthly services to Impact for a fixed monthly fee. Doc. No. 35, at 8. On or around April 2011, Mr. King began soliciting Express on behalf of Impact in Oklahoma, on a collaborative business relationship. Doc. No. 35, at 8. In that effort, the following activities occurred, according to Express:

- on April 18, 2011, Mr. King sent an email to Express's Chief Executive Officer, Bob Funk, and Chief Operating Officer, Bon Fellinger (Doc. Nos. 35, at 10; 35-4);

- in January 2012, Mr. King visited Oklahoma to discuss Impact's business and Impact and Express executed a non-disclosure agreement in Oklahoma in order to "freely discuss Impact's methods and business strategies" if the subject arose (Doc. Nos. 24-1, ¶ 22-23; 35, at 11 (citing *id.*));

- on February 2, 2012, Mr. King sent an email to Mr. Funk (who was in Oklahoma) summarizing the January 2012 meeting (Doc. Nos. 35, at 11; 35-5);

- Mr. King sent Express a presentation to solicit new business between Impact and Express, which Mr. King emailed to Messrs. Funk and Fellinger in Oklahoma (Doc. Nos. 35, at 11, 35-6; 35-7); and

- Impact's attorney sent a letter to Express headquarters in Oklahoma in December 2013 which discussed "expanded business opportunities" with Impact. Doc. Nos. 35, at 12, 35-8.

Thereafter, the relationship between the parties appears to deteriorate. Chief among Express's allegations against Defendants is that Mr. King used Express's confidential information and Express employees to solicit Express's clients and steer

---

[1] While Ms. King submits she does not recall signing the Guarantee, she does not dispute the authenticity of the document bearing her signature. Rather, she argues any such signature was a mistake. The Court will discuss this argument below.

Express employees to Impact; that Mr. King and Impact have used Express's intellectual property without authorization; and that Mr. King took other actions (or inactions) for the benefit of Impact that violated the Developer Agreement[2] or Franchise Agreement. Am. Compl. ¶¶ 25-28.[3] Express alleges that these transgressions occurred "in and among several states including, but not limited to, Georgia and Texas." *Id.* ¶¶ 26-27.

Southern and Mr. King agree that they are bound by the forum selection clause and consent to jurisdiction. Doc. No. 24, at 2. Ms. King and Impact, however, argue that the Court lacks personal jurisdiction over them and should dismiss them from the case.

## II.    THE PERSONAL JURISDICTION STANDARD

Because the Court has ordered no evidentiary hearing in this matter, Express need only make a *prima facie* showing that personal jurisdiction exists over Defendants. *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.,* 205 F.3d 1244, 1247 (10th Cir. 2000). In determining the facts necessary to establish personal jurisdiction, the Court accepts as true the well pled allegations set forth in the Complaint, but only "to the extent they are uncontroverted by defendant's affidavits." *Id.* (quoting *Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir.1995)); *Dudnikov v. Charlk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070. (10th Cir. 2008) ("Any factual disputes in the parties' affidavits must be resolved in plaintiffs' favor."). If there is conflicting evidence, all factual disputes are resolved in Express's favor. *Intercon*, 205 F.3d at 1505; *Dudnikov*, 514 F.3d at 1070.

---

[2] In April 2013, Express terminated the Developer Agreement with Mr. King. Am. Compl. ¶ 22.

[3] The parties spend a great portion of their briefs disputing whether Impact was a competing business and when Express first learned about Impact's existence. None of this is relevant for the question of personal jurisdiction, and the Court will not address it.

### III.     PERSONAL JURISDICTION OVER MS. KING

Both parties agree that the sole question before the Court as to Ms. King is whether she has waived her personal jurisdiction objections by virtue of a forum selection clause in the Franchise Agreement. Because personal jurisdiction is an individual right, it may be contractually waived. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n. 14 (1985) ("particularly in the commercial context, parties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction); *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986) ("jurisdiction over a party may be conferred upon a court by contractual agreement of the parties"); *Hetronic Int'l, Inc. v. Hetronic Germany GmbH*, 2015 WL 5569035, at *1 (W.D. Okla. Sept. 22, 2015) (forum selection clause waives objection to personal jurisdiction).

Ms. King argues that she has not waived this right because she was not a signatory to the Franchise Agreement and therefore is not bound by the forum selection clause. Express counters that the forum selection clause was incorporated by reference in the Amendment and that because Ms. King signed the Guarantee to the 2008 Amendment to the Franchise Agreement, she is bound to the forum selection clause. Ms. King alternatively argues that application of the forum selection clause to her would be unfair and unreasonable. The Court addresses these arguments in turn.

## A.    The Forum Selection Clause Was Incorporated by Reference

The first question is whether Ms. King is in fact bound by the forum selection clause due to her signature on the Guarantee.[4] While Ms. King does not recall signing the Guarantee and expresses surprise at having done so, she does not specifically deny signing the Guarantee and admits that the signature appears to be hers. Doc. No. 32-1, at ¶¶ 6-7, 9. Even if this were a contested issue, at this juncture of the proceedings, the Court is constrained to construe contested evidence in favor of Express. *See AST v. Sports Science, Inc.*, 514 F.3d 1054, 1058 (10th Cir. 2008) ("[w]hile we are aware that Mr. Holiday claims he has never seen the Agreement, much less signed it, at this stage of the litigation we are bound to construe all contested evidence in favor of AST"). Ms. King also admits that signatories to the Guarantee agreed to be bound to the terms of the Guarantee itself, as well as the Amendment. 38, at 7. ("[t]he guarantee language states that the guarantors agree to be '. . . jointly and severally bound by all of the provisions herein . . .' That phrase obviously refers to the guarantee, *and the five year amendment*") (emphasis added). Specifically, the Guarantee states:

> The undersigned individuals represent and warrant that they are all of the stockholders of the above-named corporate FRANCHISEE or otherwise have a direct or indirect

---

[4] Ms. King submits that alternate versions of the Amendment and Guarantee exist – one, dated August 4, 2008 without her signature on the guarantee and one, dated August 1, 2008, which does bear her signature on the guarantee. Doc. No. 32, at 2-3. Ms. King does not argue that the August 4 version controls, nor could she reasonably do so. The August 4 version appears to be an unexecuted draft. It does not bear any signatures from Express, an attestation from Ms. King, specify which Franchise Agreement it purports to modify, and the guarantee only has generic references to "stockholder/member" rather than Mr. and Ms. Kings' names, while the August 1 version contains all of this information. *Compare* Doc. No. 32-2, at 2-3 (August 4 version) *with* Doc. No. 32-3, at 2-3 (August 1 version). Thus, the analysis in this Order focuses on the August 1 fully executed version.

beneficial interest in the success of such corporate FRANCHISEE.

Accordingly, to induce EXPRESS to enter into this Agreement, each of the undersigned individuals hereby execute this Amendment to the Franchise Agreement and ***agree to be jointly and severally bound by all of the provisions herein,*** and each of the undersigned individuals ***hereby individually guarantee the performance*** by such corporate FRANCHISEE of all of FRANCHISEE'S obligations and payments hereunder.

The undersigned individuals further agree that EXPRESS does not have to pursue any remedies it may have against the above-named corporate FRANCHISEE; but rather, EXPRESS may proceed directly and primarily against any one or all of the undersigned individuals with or without joining the above-named corporate FRANCHISEE as principal or as a named party in any such proceeding.

Doc. No. 32-3, at 3 (emphasis added). Though the parties dispute the effect of the language of the Guarantee, both agree that the signatories to the Guarantee are, at the very least, bound to the terms of the Amendment which states, pertinently:

WHEREAS, EXPRESS and FRANCHISEE entered into a Franchise Agreement dated 11/2/1998, and

WHEREAS, EXPRESS and FRANCHISEE desire to amend that Franchise Agreement . . .
. . .

EXPRESS and FRANCHISEE agree to be bound by ***all of the terms and conditions of the original Franchise Agreement (as amended)***,[5] during the additional five (5) years provided by this Amendment.

Doc. No. 32-3 (emphasis added).

---

[5] No party suggests, nor does the Court find, that any amendments to the Franchise Agreement impacted the forum selection clause in the original agreement.

Ms. King argues that the forum selection clause does not bind her because it was not specifically referenced in either the Amendment or the Guarantee. However, she does not dispute that the Guarantee bears her signature, and concedes that guarantors are bound to the provisions of the Amendment. Doc. Nos. 32-1, at ¶¶ 6-7, 9; 38, at 7. The question then becomes, whether the forum selection clause in the Franchise Agreement is a provision of the Amendment. To answer that question, the Court must determine whether, as Express contends, the Franchise Agreement was incorporated by reference into the Amendment. As discussed below, the Court agrees that it was.

The Oklahoma Supreme Court recently articulated a three-prong test to determine whether a contract incorporates an extrinsic document by reference:

> Oklahoma law does not recognize a vague attempt at incorporation by reference as demonstrated in this action. Under the Oklahoma law of contracts, parties may incorporate by reference separate writings, or portions thereof, together into one agreement where (1) the underlying contract makes clear reference to the extrinsic document, (2) the identity and location of the extrinsic document may be ascertained beyond doubt, and (3) the parties to the agreement had knowledge of and assented to its incorporation.

*Walker v. Builddirect.Com Techs. Inc.,* 349 P.3d 549, 554 (Okla. 2015). [6]

The Court finds that the Amendment incorporated the Franchise Agreement by reference. First, the Amendment makes "clear reference" to the extrinsic document, i.e., the Franchise Agreement. The sole purpose of the Amendment was to modify the Franchise Agreement, and one of the four express terms of the Amendment is that parties

---

[6] Although Ms. King argues she would have signed the Guarantee in Georgia she relies on Oklahoma law in her arguments on the enforceability of the forum selection clause. Doc. Nos. 32-1, at ¶ 9; 32, at 4.

thereto "agree to be bound by all of the terms and conditions of the original Franchise Agreement (as amended)[7] during the additional five (5) years provided by this Amendment."

Second, the identity and location of the extrinsic document, the Franchise Agreement, was "acertain[able] beyond a doubt" to Ms. King. Southern was a party to the Franchise Agreement (Doc. No. 24-2, at 4) and as the 50% owner and corporate secretary of Southern, Ms. King no doubt could ascertain its identity and location. This is underscored by the fact that she attested to and her husband signed the Franchise Agreement on behalf of Southern.

Finally, Ms. King also had knowledge of and assented to this incorporation. "The Court ascertains the parties' mutual intentions from the four corners of the contract." *Walker*, 349 P.3d at 554. The Amendment clearly and unambiguously states that the parties intended for all terms of the Franchise Agreement, including the forum selection clause, to be a part of the Amendment. The Amendment provided that "EXPRESS and FRANCHISEE agree to be bound by all of the terms and conditions of the original Franchise Agreement (as amended), during the additional five (5) years provided by this Amendment." This language incorporated the entire agreement, including the forum selection clause. *See Walker*, 349 P.3d at 553 ("[w]hen incorporated material is properly referenced, that other document, or portions to which reference is made, becomes constructively part of the writing, forming a single instrument") (citations omitted). Any

---

[7] Neither party argues that the Franchise Agreement was amended in such a way to modify the forum selection clause at issue here.

failure by Ms. King to "to read duly incorporated terms will not excuse the obligation to be bound." *Id.* at 553.[8] Accordingly, this element is met.

### B.      Enforcement of Forum Selection Clause Would Not Be Unfair or Unreasonable

Forum selection clauses are *prima facie* valid and should be enforced, absent a compelling reason otherwise. *Eads v. Woodmen of the World Life Ins. Soc.*, 785 P.2d 328, 330 (Okla. Civ. App. 1989) ("forum selection clauses are prima facie valid and should be enforced unless they can be shown to be unreasonable under the circumstances"). As the party challenging the forum selection clause, Ms. King "carries a heavy burden of showing that the provision itself is invalid due to fraud or overreaching or that enforcement would be unreasonable and unjust under the circumstances." *Riley v. Kingsley Underwriting Agencies, Ltd.,* 969 F.2d 953, 957 (10th Cir.1992) (citing *M/S Bremen*, 407 U.S. at 15); *see also Adams v. Bay, Ltd.*, 60 P.3d at 511 (party resisting forum "bears the burden of persuading the court that enforcement of the forum clause would be unfair or unreasonable."); *Burggraff Servs., Inc. v. H2O Sols.*, 2014 WL 5766230 (Okla. Civ. App. Sept. 26, 2014)("forum selection clauses enjoy prima facie

---

[8] In contrast, this element was not present in *Walker* because the casual reference to the "Terms of Sale," did not provide the parties with sufficient information to have knowledge of and assent to its incorporation. "A party is deemed to have notice of incorporated terms where a reasonable prudent person, under the particular facts of the case, should have seen them." *Walker*, 349 P.3d at 553. "[A] party's failure to read duly incorporated terms will not excuse the obligation to be bound." *Id.* The Oklahoma Supreme Court in *Walker* found that the parties could not have understood "Terms of Sale" to refer to and incorporate an extrinsic document, where the contract "as presented, embodied all relevant contract terms and conditions." *Id.* at 554. As such, the phrase "Terms of Sale," did not "clearly or unambiguously state that the parties intended to incorporate any additional terms beyond the four-corners of the Contract," and "buttress[ed] the Court's conclusion that," there was no notice or assent. *Id.*

validity unless they are shown to be unreasonable under the circumstances of the particular case.").[9]

Ms. King argues that enforcement would be unfair and unreasonable because she was not a party to, nor meaningfully involved in the negotiations on the Franchise Agreement; she was not involved in any negotiations related to the forum selection clause; she was not a signatory to any other amendments, guarantees, or modifications to the Franchise Agreement; she had a policy of refusing to personally guarantee Southern's obligations; and any signature on a guarantee was a product of mistake and occurred without discussing the forum selection clause. She further argues there was an absence of meaningful choice or a fair opportunity to bargain for or against the forum selection clause because the Amendment she signed did not specifically reference the forum selection clause. Doc. No. 32, at 4-5.

These arguments are insufficient to meet Ms. King's "heavy burden" to avoid the forum selection clause. That she was a non-party to and did not negotiate the Franchise Agreement is irrelevant because, as discussed above, she was a signatory to the Guarantee which bound her to the forum selection clause in the Franchise Agreement.

---

[9] It appears that the enforceability of forum selection clauses is a matter of federal common law rather than state law. *See Blackwell Enterprises, Inc. v. Henkels & McCoy, Inc.*, 2013 WL 3771290, at *4 (W.D. Okla. July 16, 2013) ("although interpretation of the parties' contract requires application of state law, the majority of federal circuit courts have held that federal common law governs the effect to be given to a forum selection clause in a diversity action") (collecting cases). However, the court need not decide this issue because Oklahoma appears to follow federal common law on this issue. *See, e.g.*, *Adams*, 60 P.3d at 510 ("Absent compelling reasons otherwise, forum selection clauses are enforceable") (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)); *Burggraff Servs*, 2014 WL 5766230 (citing to *Eads*, 785 P.2d 328); *Eads*, 785 P.2d at 330 (citing *M/S Bremen*, 407 U.S. 1); *see also Excell, Inc. v. Sterling Boiler & Mech., Inc.* 106 F.3d 318, 320 (10th Cir. 1997) (district courts need not expressly decide the issue where applicable state and federal laws are the same).

Regarding her arguments that she did not negotiate the forum selection clause in the Franchise Agreement or while signing the Guarantee, the United States Supreme Court long ago rejected the idea that a forum selection clause is enforceable only if the parties specifically negotiate for it. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991) ("[W]e do not adopt the Court of Appeals' determination that a nonnegotiated forum-selection clause in a form ticket contract is never enforceable simply because it is not the subject of bargaining."); *see also Presbyterian Healthcare Servs. v. Goldman, Sachs & Co.*, 122 F. Supp. 3d 1157, 1187 (D.N.M. 2015) ("The Supreme Court has rejected the notion that the parties must specifically negotiate a forum-selection clause for it to be enforceable") (citing *id.*); *Cardoni v. Prosperity Bank,* 2014 WL 3369334, at *7 (N.D. Okla. July 9, 2014) ("In general, a forum selection clause is enforceable even if one party to the contract had no opportunity to negotiate for the inclusion or exclusion of a forum selection clause.")

*Eads*, upon which Ms. King relies heavily, does not compel another conclusion. 785 P.2d at 330. There, contract containing the forum selection clause was a clear product of overreaching. The clause was in the employee's third employment agreement which the employer required the employee to consent to as a condition of employment. *Eads*, 785 P.2d at 330. More recently, the Oklahoma Court of Appeals found unenforceable a forum selection clause which was entered "at a time when emergency services were required, had already been agreed upon, and were being performed." *Burggraff Servs.*, 2014 WL 5766230, at *3. Given those circumstances, the court found

that there was no evidence that the forum selection clause was negotiated and the defendants had little bargaining power. *Id.*

Such circumstances are not present here. Ms. King admits she is the Corporate Secretary and 50% owner of Southern, and that her husband owns the other 50%. Doc. Nos. 24-3, at ¶ 14; 32, at 2. She also admits that the Guarantee bears her signature. Doc. No. 32-1, at ¶¶ 7, 9. Moreover, she was aware of the Franchise Agreement at the time she signed the Guarantee, given the fact that she attested to the original Franchise Agreement. Doc. No. 24-2, at 61. Finally, as Express points out, that Ms. King had a policy of refusing to be a signatory to agreements involving Southern and Express underscores her considerable bargaining power in these transactions. Given these facts, it cannot be said that the forum selection clause was a result of unequal bargaining power or a lack of meaningful choice like that present in either *Eads* or *Burggraff*.

Because the forum selection clause is binding and enforceable on Ms. King, the Court concludes it has personal jurisdiction over Ms. King. Accordingly, Defendants' Motion to Dismiss the claims against Ms. King for lack of personal jurisdiction is DENIED.

## IV.    PERSONAL JURISDICTION OVER IMPACT

The threshold issue for personal jurisdiction is whether any applicable statute confers jurisdiction by authorizing nationwide service of process on the defendant. *See Dudnikov*, 514 F.3d at 1070. The applicable statute here, the Lanham Act, does not. *See generally*, 15 U.S.C. § 1051, *et seq.*; *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) (Lanham Act does not authorize nationwide service of process); *Cashland Inc. v.*

*Cashland Inc.*, 5:15-cv-800, (W.D. Okla. Jan. 14, 2016) (same). Accordingly, pursuant to Federal Rule of Civil Procedure 4(k)(1)(A), the Court must apply the law of the state to determine whether personal jurisdiction exists and determine whether the statutory exercise of personal jurisdiction comports with constitutional due process. *Dudnikov*, 514 F.3d at 1070.

"The test for exercising long-arm jurisdiction in Oklahoma is to determine first whether the exercise of jurisdiction is authorized by statute and, if so, whether such exercise of jurisdiction is consistent with constitutional requirements of due process." *Luckett v. Bethlehem Steel Corp.*, 618 F.2d 1373, 1385-86 (10th Cir. 1980) (citations omitted). Because the Oklahoma long-arm statute extends jurisdiction to the maximum extent permitted by due process, "this two-part inquiry collapses into a single due process analysis." *Rambo v.Am. S. Ins. Co.*, 839 F.2d 1415, 1416 (10th Cir. 1988) (quoting OKLA. STAT. ANN. tit. 12,§ 2004(F) ("A court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States.")); *Dudnikov*, 514 F.3d at 1070. "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King*, 471 U.S. at 471-72 (citation and footnote omitted). Accordingly, a court "may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) (citation omitted). Plaintiff meets the minimum-contacts test by establishing either general or specific jurisdiction. *Emp'rs Mut. Cas. Co. v. Bartile Roofs,*

*Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010). If plaintiff does so, the Court must determine if the exercise of personal jurisdiction over the defendant would offend "traditional notions of fair play and substantial justice," or, instead, is "reasonable." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987)).

Express argues only that the Court has specific jurisdiction over Impact. Express therefore must show that: (1) Impact "purposefully directed its activities at residents of the forum state" and (2) Express's "injury arose from *those* purposefully directed activities." *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013) (citing *Dudnikov*, 514 F.3d at 1070) (emphasis added).

### A.     *Whether Impact Purposeful Directed Its Activities at Oklahoma*

Under the purposeful direction prong, Express must show that Impact committed an intentional action, "expressly aimed at [Oklahoma]," with "knowledge that the brunt of the injury would be felt in [Oklahoma]." *Newsome*, 722 F.3d at 1264 (citing *Dudnikov*, 514 F.3d at 1072).

Here, Express argues the following contacts show that Impact purposefully directed its activities at Oklahoma: (1) Impact's tortious activity of misusing intellectual property and confidential information and diverting customers and employees was aimed at Oklahoma because that is where Express felt the injuries; (2) from 2002 to May 2013, Express and Impact had a business relationship whereby Express performed consultation services for Impact; and (3) Impact solicited Express for a collaborative business opportunity. Doc. No. 35, at 21-24.

15

Because Impact does not seriously challenge that the alleged activities were intentional (Doc. No. 38, at 9), the Court turns to whether Express has met the "expressly aimed" element. Under the Tenth Circuit's "somewhat more restrictive approach," the "expressly aimed" element requires that the forum state must be the "focal point of the tort." *Dudnikov*, 514 F.3d at 1074 n. 9; *Newsome*, 722 F.3d at 1268 (quoting *id.*).

Express's first proffered contact is Impact's tortious activity of misappropriating intellectual property and confidential information in order to divert customers and employees from Express. Express only alleges that this activity took place and targeted individuals in Georgia and Texas. Am. Compl. ¶¶ 26-27. Nevertheless, Express contends that Impact expressly aimed these tortious activities at Oklahoma because it was aware that Express was headquartered and would be injured in the state. Doc. No. 35, at 22-23. In essence, Express argues that *its* presence in Oklahoma is sufficient to show that Impact expressly aimed its activities at Oklahoma.

This argument has been rejected by both the Supreme Court and the Tenth Circuit. *Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014) ("*Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum") (citing *Calder v. Jones*, 465 U.S. 783 (1984)); *Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1180 (10th Cir. 2014) (*Walden* teaches that personal jurisdiction cannot be based on interaction with a plaintiff known to bear a strong connection to the forum state); *Anzures v. Flagship Rest. Grp.*, 2016 WL 1612789, at *3 (10th Cir. Apr. 22, 2016) ("defendant's suit-related conduct did not create any meaningful contacts with [the forum] itself, and the fact that [the plaintiff] was affected [in the forum] (because he

16

resides there) [was] insufficient to authorize personal jurisdiction over defendants.")
(citing *Walden*). Rather, this authority teaches that specific jurisdiction requires that the
defendant's suit-related activity create meaningful contacts with the forum state:

> . . . it is the defendant, not the plaintiff or third parties, who
> must create contacts with the forum State. In this case, the
> application of those principles is clear: Petitioner's relevant
> conduct occurred entirely [out of state], and the mere fact that
> his conduct affected plaintiffs with connections to the forum
> State does not suffice to authorize jurisdiction. . .

*Walden*, 131 S.Ct. at 1126); *see also Rockwood Select*, 750 F.3d at 1180; *Anzures*, 2016
WL 1612789, at *3.

Urging a contrary result, Express relies upon *Newsome*, where the Tenth Circuit
found that the Canadian defendants expressly aimed their activities at Oklahoma by
injuring Mahalo USA, a Delaware corporation that "operated exclusively in Oklahoma."
722 F.3d at 1262. Because defendants were aware that Mahalo USA "operated
exclusively in Oklahoma," Oklahoma was necessarily the focal point of any tort against
the company. *Id.* at 1269. In contrast, Express does not operate in Oklahoma exclusively,
but has "nearly 700 franchised locations in United States and Canada." Am. Compl. ¶ 7.

Express's other cases also do not support its argument that injury to a forum
resident alone is sufficient to establish personal jurisdiction. In *Pro Axess, Inc. v. Orlux
Distribution, Inc.*, the breach-of-contract lawsuit involved a contract in which "services
necessary for the contract were to be performed" in the forum state. 428 F.3d 1270, 1277
(10th Cir. 2005). Express's has not alleged or argued any actions related to the conduct
occurred in Oklahoma. *AST Sports* is likewise distinguishable because the total and direct

injury (non-payment of orders) occurred in the forum state. 514 F.3d 1054. As discussed above, Express has not shown that to be the case here. Finally, the Supreme Court in *Burger King* expressly rejected the idea that foreseeability of injury in another State alone was sufficient to establish contacts there. 471 U.S. at 474 ("the Court has consistently held that [foreseeability of injury in another State] is not a 'sufficient benchmark' for exercising personal jurisdiction.") (quoting *World-Wide Volkswagen*, 444 U.S. at 295).[10]

Accordingly, because Express relies exclusively on its own connections with Oklahoma to argue that Impact's out-of-state activities were expressly aimed at Oklahoma it has failed to show that these contacts meet the purposeful direction prong.[11]

Even if the remaining contacts, Impact's solicitation of and business relationship with Express, could satisfy the purposeful direction prong, as discussed below, Express has not made a *prima facie* showing that its injuries arose out of those contacts.

### B.      *Whether Express's Injuries Arose From Those Activities*

To determine if an injury arises out of those activities, courts apply either the but-for or the proximate-cause test. *Newsome*, 722 F.3d at 1269.  Under the but-for test, "any event in the causal chain leading to the plaintiff's injury is sufficiently related to the claim to support the exercise of specific jurisdiction." *Id.* (quoting *Dudnikov*, 514 F.3d at

---

[10] Moreover, in all of those cases, the litigation arose out of that business relationship. As discussed *infra*, the instant lawsuit did not arise out of Impact's solicitations of Express nor its prior business relationship with Express.

[11] The Court is likewise dubious that Express has shown that Impact knew that the brunt of the injury would be felt in Oklahoma, given the fact that the conduct was in Georgia and would most directly impact Express's franchise in Georgia. Because Express cannot meet the "expressly aimed" element, however, the Court does not reach this issue.

1078). By contrast, the proximate-cause test "is considerably more restrictive and calls for courts to examine whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claim." *Id.* at 1269-70 (quoting *Dudnikov*, 514 F.3d at 1078). While the Tenth Circuit has not chosen one over the other, both tests require a "true causal element," between defendants' forum contacts and the litigation. *Id.*;[12] *see also Shrader v. Biddinger*, 633 F.3d 1235, 1240, 1246 n.8 (10th Cir. 2011) (discussing *Dudnikov,* 514 F.3d at 1078–79) (discussing the "causal aspect" of "arising out of"); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ("specific jurisdiction requires an 'affiliatio[n] between the forum and the underlying controversy'") (quoting von Mehren & Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv. L. Rev. 1121, 1136 (1966)). The Court need not decide which test to apply here, because Express's theory fails under either test.

Express fails to identify the causal connection required under either test between Impact's solicitations or Impact's retention of Express's services, on the one hand, and the injuries it suffered from the alleged theft of its intellectual property and confidential information. Express alleges that Mr. King obtained this information in his capacity as an Express franchisee and developer. Am. Compl. ¶ 26. It does not allege that Mr. King or

---

[12] The Tenth Circuit has rejected a third test, the "substantial connection" test. *See Shrader*, 633 F.3d at 1246 n.8 (discussing *Dudnikov*, 514 F.3d at 1078–79). "Under this theory, the relationship between the contacts and the suit can be weaker when the contacts themselves are more extensive." *Id.* Rejecting this test, the Tenth Circuit noted that the test "inappropriately blurs the distinction between specific and general personal jurisdiction." *Id.* The test "varie[d] the required connection between the contacts and the claims asserted based on the number of the contacts" and therefore "improperly conflates these two analytically distinct approaches to jurisdiction." *Id.* Because the test eliminated "the distinction between contacts that are sufficient to support any suit and those that require the suit be related to the contact, it also undermines the rationale for the relatedness inquiry: to allow a defendant to anticipate his jurisdictional exposure based on his own actions." *Id.* at 1078–79.

Impact obtained this information during the course of, as a result of, or in any way related to his alleged solicitations on behalf of Impact or Impact's retention of Express for consultative services. At most, Express appears to argue that the tortious conduct was somehow a reaction to its rejection of Impact's entreaties to expand an existing business relationship. However, Express's rejection was not a part of the causal chain that led to Express's injuries, as required under the but-for test. Nor was it a proximate cause of Express's injury, as Express has not shown how these contacts would be relevant to the merits of its claims against Impact. Underscoring this conclusion is the fact that Express omitted any reference to either the long-standing business relationship or the repeated solicitations in its complaint. The undersigned therefore concludes that Express's injuries did not arise out of Impact's Oklahoma contacts.

C.   *Whether Exercising Jurisdiction Over Impact Would Offend Traditional Notions Of Fair Play And Substantial Justice.*

Once a plaintiff has satisfied its minimum-contacts burden, the defendant must demonstrate that the exercise of personal jurisdiction would "offend traditional notions of fair play and substantial justice." *Newsome*, 722 F.3d at 1271 (quoting *Dudnikov,* 514 F.3d at 1080). However, Because Express has not met its minimum-contacts burden, the Court need not address this issue.

D.   *Express Request for Jurisdictional Discovery*

Both in its brief opposing Defendants' Motion to Dismiss and in a separate Motion, Express requests leave to conduct jurisdictional discovery as to Impact.    The decision to permit jurisdictional discovery is left to the sound discretion of the Court.

*Breakthrough Management v. Chukchansi Gold Casino,* 629 F.3d 1173, 1189 (10th Cir. 2010). Refusal to permit jurisdictional discovery is only an abuse of discretion "if the denial results in prejudice to a litigant. Prejudice is present where pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary." *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 103 (10th Cir. 2011) (internal quotation marks and citations omitted). Denial of discovery is not an abuse of discretion where there is a "very low probability that the lack of discovery affected the outcome of this case." *Bell Helicopter Textron, Inc. v. Heliqwest Intern., Ltd.,* 385 F.3d 1291, 1299 (10th Cir. 2004). Nor is it an abuse of discretion to deny generalized, unsupported requests for jurisdictional discovery. *World Wide Ass'n of Specialty Programs & Sch. v. Houlahan,* 138 F. App'x 50, 52 (10th Cir. 2005). The party seeking discovery bears the burden to show entitlement to jurisdictional discovery. *Breakthrough Management*, 629 F.3d at 1189 n. 11.

Express has not met its burden here. Express provides no specificity regarding what it hopes to uncover during discovery. Instead, it makes generalized references seeking "additional evidence" regarding Impact's alleged use of Express's trademarked property, "Impact's actions aimed towards Oklahoma, their knowledge of injury felt in Oklahoma, and their actions regarding the use of Express's protected mark(s)." Doc. No. 37, at 2. Further, in light of the Supreme Court's decision in *Walden*, it is difficult to imagine how information relating to the requested information will alter the Court's conclusion that jurisdiction over Impact is lacking. Finally, Express has not argued, let alone demonstrated, that it will be prejudiced by denial of jurisdictional discovery.

Express has not identified any specific issue that would be clarified by the benefit of discovery, nor demonstrated to the Court that additional facts are necessary to resolve the jurisdictional issue. For these reasons, the Court denies Express's request for jurisdictional discovery.

Because Express has not met its *prima facie* burden to show that specific jurisdiction exists over Impact, nor shown how discovery on this issue would be productive, necessary, or helpful, the Court DENIES Express's request for jurisdictional discovery and GRANTS Defendants' Motion to Dismiss the claims against Impact for lack of personal jurisdiction.

## V.     CONCLUSION

The Court therefore GRANTS IN PART AND DENIES IN PART Defendants' Motion to Dismiss (Doc. No. 24).

It GRANTS the Motion with respect to Defendant Impact and DENIES the Motion with respect to Defendant Emily King.

The Court also DENIES Express's Motion, in the Alternative, for Order Permitting Limited Jurisdictional Discovery. (Doc. No. 37). The claims against Defendant Impact are therefore DISMISSED WITHOUT PREJUDICE for lack of personal jurisdiction.

IT IS SO ORDERED this 6th day of June, 2016.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE