# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| EXPRESS SERVICES, INC. d/b/a<br>EXPESS EMPLOYMENT<br>PROFESSIONALS, a Colorado<br>corporation,<br><br>      Plaintiff,<br><br>v.<br><br>DON G. KING, an individual,<br>EMILY D. S. KING, an individual,<br>and SOUTHERN STAFFING, INC.,<br>a Georgia corporation,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. CIV-15-1181-R |

## ORDER

Impact Workforce Technologies ("IWT") has moved pursuant to Federal Rule of Civil Procedure 24(b) to intervene in the present case to assert a claim against Plaintiff Express Services ("Express"). For the reasons that follow, IWT's Motion is GRANTED.

## Discussion

The factual lead-up and procedural posture of this case was outlined in the Court's earlier Order (Doc. 81). Suffice it to say that the parties, who had entered into Franchise and Developer Agreements, are now disputing whether they are in breach. At the center of this specific motion is a vendor-management software called Clarity VMS, which was apparently developed by Defendant Don King and his company, IWT. IWT now seeks to intervene to assert a claim against Express for tortious interference with prospective contractual or business relations. It alleges that it made several presentations regarding

1

Clarity VMS to a group of companies known as The Stoller Group, a group of companies owned by Bill Stoller (the co-founder, president, and vice-chairman of Express) beginning in May of 2015; that the Stoller Group was prepared to enter into a licensing agreement in August 2015; and that Express sent a letter to King and IWT in October 2015 instructing them not to market or sell Clarity VMS. IWT insists that this led The Stoller Group to back out of the deal.

Federal Rule of Civil Procedure 24(b)(1)(B) provides that a "court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." In deciding whether intervention is proper, the Court considers (1) whether the application is timely; (2) whether the movant's claim and the underlying action share a common question of law or fact; and (3) whether the intervention will unduly delay or prejudice adjudication of rights of the original parties." *See Kane County, Utah v. United States,* 597 F.3d 1129, 1135 (10th Cir. 2010).

IWT has satisfied these elements.[1] IWT filed its original request to intervene on October 31, 2016 (Doc. No. 57), which was prior to the deadline established by the Court for amending the pleadings. This Motion comes only after the Court denied IWT's initial motion because it had failed to adhere to the pleading requirements of Rule 24(c). It has done so now. Nor is the Court convinced that intervention would work prejudice on Express. As explained below, there appears to be significant overlap between Express's

---

[1] The Court does pause, however, to acknowledge Express's chief argument as to why intervention is improper. It argues that IWT's desire to intervene is improper given the fact that this Court previously dismissed a sister company of IWT, Impact Outsourcing, from this case for lack of personal jurisdiction. (Doc. 40). Impact's dismissal, however, was the result of this Court comporting with principles of constitutional due process. If IWT wants to subject itself to the jurisdiction of this Court, it is free to do so.

2

breach of contract claim and IWT's tortious interference claim. If anything, intervention now will avoid a separate suit by IWT that could likely be later consolidated for discovery purposes.

The real dispute, then, is over the second element—whether the new claim and the underlying action share a common question of law or fact. Express's First Amended Complaint alleged that King was not only using a software that his company, IWT, had created called Clarity VMS at his Express franchises, but also soliciting Express franchisees to starting using the software as well.[2] And while Express's Second Amended Complaint omitted any reference to IWT or Clarity VMS, it still included the allegation that King, along with co-Defendant SSI, had agreed not to use any software other than that provided by Express. (Doc. 60, ¶ 16).

Essentially, there is not a definite way to cleanly divorce Express's breach of contract claim from IWT's tortious interference claim. If Express was legally permitted—by way of the Franchise Agreement—to interfere with King's pending deal with The Stoller Group and to prohibit King and IWT from marketing Clarity VMS, then the implications of the Franchise Agreement are directly at issue. The interpretation of the Franchise Agreement as it relates to Express's ability to control the actions of SSI and King, including whether they can use and sell the Clarity VMS software, is an issue of law

---

[2] "[King] has further formed another business, Impact Workforce Technology, of which he is the sole or substantial owner, directly or indirectly, which has developed software named Clarity VMS that [King] is using, without authorization, at his Express franchised locations, and is actively soliciting Express franchisees to use his Clarity VMS software without approval from Express." (Doc. 9, ¶ 25).

3

or fact common to the various claims in this case. IWT's Motion to Intervene is therefore GRANTED.

IT IS SO ORDERED this 23rd day of February 2017.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE